### VIRGINIA TRUST COMPANY v. NATIONAL BANK OF GOLDSBORO.

(Filed 10 May, 1922.)

Appeal by plaintiff from *Cranmer, J.,* at August Term, 1921, of Wayne.

*A. D. Christian and Clarkson, Taliaferro & Clarkson for plaintiff.*
*R. N. Simms and Teague & Dees for defendant.*

Hoke, J.   In so far as the essential facts tend to impute liability to defendant, this case presents questions substantially similar to those appearing in *Bank v. Bank, ante,* 463, and for reasons stated in that case we are of opinion that the judgment of the Superior Court sustaining defendant's demurrer should be
Affirmed.

Clark, C. J., dissenting:  Defendant demurred to the complaint on the ground that the complaint did not allege facts sufficient to constitute a cause of action.   The sole question before the court, therefore, was the said ground of demurrer, and the court sustained the demurrer upon the ground therein set forth, and rendered judgment in favor of defendant dismissing the action, and to this judgment plaintiff excepted and appealed therefrom to the Supreme Court.

The facts alleged in the complaint, which upon demurrer are to be taken as true, are as follows:

1. Plaintiff is a Virginia corporation, engaged in the general banking business at Richmond, Va., and defendant is a national banking corporation engaged in the national banking business at Goldsboro, N. C.

2. A short time prior to 23 June, 1918, after regular banking hours and not in the regular course of its business, and when G. A. Norwood president of defendant, and one N. L. Massey were alone in defendant's

banking house, defendant, acting through its president and as a matter of accommodation, sold and delivered to Massey a number of New York Exchange checks, drawn by defendant upon First National Bank of New York City and signed by Norwood, as president, payable to the order of Massey and for small amounts ranging from $2 to $9, among the checks being the one hereinafter more specifically referred to. The checks were drawn in the form usually employed by defendant in drawing upon said drawee, being printed or lithographed upon a good bond or ledger paper and not upon what is commonly known as "safety paper," the date, name of payee, and the amount in words and figures being all written in the blanks on the checks with ordinary pen and ink either by Norwood or Massey. At the time of the issuance of the checks and for some years prior thereto defendant owned a protectograph or mechanical check writer, or some such machine or device, which it had commonly and habitually used in drawing all New York Exchange checks issued by it and by means of which the letters forming the words denoting the amount of such checks were cut or perforated into the paper, destroying its fiber and damaging its surface and by means of which the perforations were dyed with some fast or indelible red and black ink, small perforations forming some fancy design being made immediately preceding the first word and immediately following the last word; that in issuing the checks Norwood negligently failed and omitted to either write same upon safety paper or to use a protectograph, or any like machine or device, to write in the amount thereof.

3. At the time of the issuance of the checks, and for some years prior thereto, it was a matter of common and general knowledge, which was known, or should have been known, by defendant's officers, that there had been discovered and developed certain simple chemical preparations, which were easily procurable at retail stationery stores at small cost by the public generally and were in general use for legitimate purposes, by means of which a person of ordinary skill and learning, such as Massey, could easily remove from an ordinary, good grade of bond or ledger paper, such as the checks were written upon, all traces of writing placed thereon with ordinary pen and ink, leaving no visible sign or trace upon the paper of either the original writing or the means used for its removal.

4. For several years prior to 1918 the danger of innocent parties being damaged and defrauded by application of the processes described above became a matter of common and general knowledge and grave concern to all bankers; and, in order to combat the danger of innocent parties being so damaged, certain simple protective processes and devices were evolved and adopted, and were, in June, 1918, and had been for some years prior thereto, commonly known and approved and in common and general use by banking institutions and business houses; and, by the use

of said processes and devices, checks could be so drawn that they could not be altered or raised so as to escape detection by a reasonably careful and prudent person in the ordinary course of business, save by a few especially and highly trained chemists and document experts, and especially could not have been raised by Massey or any person of ordinary skill and knowledge, such protective devices being as follows: (*a*) The drawing of checks upon a specially prepared and sensitized paper, known as "safety paper," upon which it was impossible to alter or erase writing without leaving tell-tale traces; and (*b*) a mechanical check-writing machine, such as the kind described and referred to above, and such as was owned and had been commonly used by defendant.

5. Among the checks so sold to Massey by defendant, as aforesaid, was one bearing number 11,828, which was originally drawn for the following amount, viz.: $2. After securing possession of this check, Massey, or some other person at his direction, removed therefrom the original writing, denoting the amounts thereof, by means of the chemical process above referred to, and raised the same to the following amount, viz.: $15,000, the new amount being inserted in said check and figures in pen and ink following the dollar mark and being punched and written therein in words and figures with a mechanical check writer or protecto-graph of the kind described above. After having been so altered, and at the time when presented to plaintiff as hereinafter set forth, the check appeared regular and genuine in all respects and bore no visible signs and traces of the alteration, and the fact that it had been altered could not be detected by the exercise of ordinary care.

6. On or about 25 June, 1918, Massey, whose identity was known to plaintiff's officers, indorsed, delivered, and sold to plaintiff at Richmond, Va., the check above referred to bearing No. 11,828, same having been altered in the manner described above so as to appear and purport to have been originally drawn for the sum of $15,000; and plaintiff immediately forwarded said check to New York for collection through its correspondent there, and same was duly honored and paid in the regular course of business by the First National Bank, the drawee, of which fact plaintiff was duly notified.

7. In return for said check, which purported to have been originally drawn for $15,000, as aforesaid, plaintiff on the same day gave Massey two checks for the sums of $9,000 and $6,000 respectively, drawn by plaintiff upon Planters' National Bank of Richmond, Va., to the order of said Massey, both of which checks were on the same date, *i. e.*, 25 June, 1918, presented to and paid by Planters National Bank, the drawee.

8. About 28 June plaintiff was notified by the First National Bank of New York that defendant refused to recognize said check No. 11,828

as its obligation on the ground that it had been originally issued for $2 and later raised to $15,000; and thereafter, upon due demand by the First National Bank, plaintiff refunded to the First National Bank the sums paid out by it upon said check, to wit: $15,000, with interest at six per cent from 26 June, 1918, the date of the payment of the check by the drawee, doing so in recognition of its liability to the First National Bank as an unqualified indorser of said check.

9. On account of the foregoing, plaintiff's loss and damage was $15,000, with interest from 26 June, 1918.

10. New York Exchange checks, drawn by a national bank, written upon safety paper or by means of a mechanical check writer, have always enjoyed a very high degree of negotiability, and have always been accepted and cashed by all bankers, not by virtue of any dependence upon the solvency and responsibility of the payee, but merely upon identification of the payee, and with dependence only upon the solvency of the drawer and the drawee banks.

11. Plaintiff knew and relied upon defendant's habitual and customary use of the protectograph or mechanical check writer in drawing New York Exchange.

12. Defendant was negligent in issuing the said checks in the form and under the circumstances alleged, and in the omission to use either safety paper or the mechanical check writer, and particularly in the failure to use the check writer, which it had habitually and customarily used theretofore; and defendant, by reason of its negligent omission, is estopped to deny its liability to plaintiff on account of said checks.

The only exception in the record is to the judgment sustaining the demurrer and dismissing the action upon the ground that the complaint does not set forth facts sufficient to constitute a cause of action. This case and that of *Bank v. Bank, ante,* 463, involve facts substantially similar, and the decision and the dissenting opinion in that case apply here, and, therefore, need not be repeated.